IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| UNITED STATES OF AMERICA | ) | Criminal No. 2:16cr6 |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY L. BURFOOT, | ) | |
| | ) | The Honorable Henry Coke Morgan |
| Defendant. | ) | |

## GOVERNMENT'S BILL OF PARTICULARS

The United States of America, through its undersigned counsel, files this Bill of Particulars in response to the Court's Order that the government define the terms "official act" and "quid pro quo" and provide representative examples of the evidence it intends to introduce at trial of the specific things of value the defendant solicited and accepted, and the official acts the defendant promised to perform or did perform in return for these bribes. See Doc. No. 79. In keeping with the Court's Order, this is not an exhaustive list of all the government's evidence. And of course, the government will offer more detailed definitions of all applicable legal terms in its proposed jury instructions.

## THINGS OF VALUE

Bribery involves the exchange of a thing or things of value for official action by a public official, in other words, a *quid pro quo*, which is a Latin phrase meaning "this for that" or "these for those". See e.g., Evans v. United States, 504 U.S. 255, 268 (1992); United States v. Hairston, 46 F.3d 361, 365 (4th Cir. 1995); United States v. Arthur, 544 F.2d 730, 734 (4th Cir. 1976). Bribery requires the intent to effect an exchange of money or other thing of value for official action, but each payment or thing of value need not be correlated with a specific official action.

In other words, it is unnecessary for the government to link every thing of value to a specific official action by a public official. See United States v. Jefferson, 674 F.3d 332, 357–59 (4th Cir. 2012) ("[I]t is unnecessary . . . to link every dollar paid to one of the Jefferson family companies to a specific meeting, letter, trip, or other action by Jefferson to fulfill his end of a corrupt bargain"; approving instruction that "the quid pro quo requirement is satisfied if you find that the government has established beyond a reasonable doubt that the defendant agreed to accept things of value in exchange for performing official acts on an as-needed basis, so that [when]ever the opportunity presented itself, he would take specific action on the payor's behalf"); United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) ("The intended exchange in bribery can be 'this for these' or 'these for those,' not just 'this for that.' Further, it is not necessary for the government to prove that the payor intended to induce the official to perform a set number of official acts in return for the payments. The quid pro quo requirement is satisfied so long as the evidence shows a 'course of conduct' of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor. Thus, all that must be shown is that payments were made with the intent of securing a specific *type* of official action or favor in return. For example, payments may be made with the intent to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." (internal citations omitted)).

The defendant is charged with soliciting and obtaining payments, gifts, and other things of value from individuals with interests before the City of Norfolk, in exchange for promising to perform and performing official actions, including certain specific official actions and other official actions on an as-needed basis, as opportunities arose, to benefit the individuals and their

2

interests. See e.g., Indictment ¶ 10. At trial, the government intends to prove that the defendant received the following payments, gifts, and other things of value, among others:

- Starting in or about 2005, CE provided Anthony Burfoot with cash payments, meals, drinks, entertainment, and travel, including travel to the CIAA tournament in Charlotte, North Carolina.

- On or about March 15, 2005, CE arranged for a company to install a new heat pump and duct system in Anthony Burfoot's home located on Winthrop Street in Norfolk. The defendant never repaid CE.

- On or about December 29, 2006, Anthony Burfoot purchased DE's Mercedes sedan for $20,000 financing the entire purchase with an automobile loan from NAE Federal Credit Union. However, the defendant instructed DE to make payments on the automobile loan. As directed, DE made both direct payments to the loan and gave the defendant cash so that he could make payments on the loan.

- From in or about April 2009 through June 2009, DE halted the development of the Broad Creek Villas due to Anthony Burfoot's complaint that the only entrance to the Villas was located directly across from his home and, as a result, cars would shine headlights into his house. DE ultimately acquiesced to Burfoot's demand and altered the plans for the Villas to move the entrance away from Burfoot's home.

- Between in or about March 2005 through February 2011, DE paid Anthony Burfoot $400,000 in cash, in small increments.

- On or about October 8, 2009, TA paid TS $25,000.

- In or about early 2012, RB paid Anthony Burfoot between $5,000 and $10,000 related to RB's request to encroach on Atlans Street.

- In or about 2012, RB provided $20,000 in undocumented, interest only loans to Anthony Burfoot. The defendant never repaid RB.

- In or about January 2012, Anthony Burfoot stayed free of charge at RB's beach house located in Kitty Hawk, North Carolina.

## OFFICIAL ACTS

The United States generally defines the term "official act" as follows:

> The term "official act" means any decision or action on any question or matter, which may at any time be pending, or which may by law be brought before any public official, in such public official's official capacity, or in such official's place of trust or profit. This has two parts to it.
>
> First, the question or matter must be specific and focused and involve a formal exercise of governmental power. Second, the public official must make (or agree to make) a decision or take (or agree to take) an action on that question or matter. A decision or action on a qualifying step for a question or matter would qualify as an official act. An official act also includes a public official exerting pressure on another official to perform an official act, or providing advice to another official, knowing or intending that such advice will form the basis for an official act by another official.
>
> Setting up a meeting, hosting an event, or talking to another official, without more, does not qualify as a decision or action on a question or matter. Simply expressing support at a meeting, event, or call — or sending a subordinate to such a meeting, event, or call — similarly does not qualify as a decision or action on a question or matter, as long as the official does not intend to exert pressure on another official or provide advice, knowing or intending such advice to form the basis for an official act. The jury may, however, consider evidence that a public official set up a meeting, hosted an event, talked to another official, expressed support, or sent a subordinate as evidence of an agreement to take an official act. The jury may consider all of the evidence in the case, including the nature of the transaction, in determining whether the conduct involved an official act.
>
> In order to satisfy the elements of bribery, however, the public official need not actually perform an official act, or even intend to do so. When the defendant is a public official charged with receiving a bribe, it is sufficient if the public official agrees to perform an official act in exchange for a thing of value. This agreement need not be explicit, and the public official need not specify the means that he will use to perform his end of the bargain. The jury may, for example, conclude that an agreement was reached if the evidence shows that the public official received a thing of value knowing that it was given with the expectation that the official would perform an official act in return. Likewise, when the defendant is a person who is charged with paying a bribe, it is sufficient if the defendant intends or solicits the public official to perform an official act in exchange for a thing of value.
>
> Source: Adapted from 18 U.S.C. § 201(a)(3); *McDonnell v. United States*, 579 U.S. ___, slip op. at 19-21 (2016).

At trial, the government intends to prove that the defendant promised to perform and/or did perform the following official actions, among others:

- On or about March 16, 2006, Anthony Burfoot exerted pressure on NRHA officials to award Tivest eight lots on which to build single family and multi- family homes in Broad Creek.

- On or about April 8, 2008, Anthony Burfoot voted to approve a zoning ordinance related to the Broad Creek Villas project. That same day, Anthony Burfoot voted to approve an ordinance that closed a portion of Parish Road to support the Broad Creek Villas project.

- On or about July 22, 2008, Anthony Burfoot voted to approve an ordinance authorizing the City of Norfolk to enter into a Land Disposition and Development Contract ("Broad Creek Villas LDDC") with Tivest for the Broad Creek Villas project. This ordinance permitted the City of Norfolk to convey the land for the project at a nominal cost, and to pay Tivest $200,000 for infrastructure improvements associated with the project.

- On or about May 13, 2009, Anthony Burfoot promised to get the necessary votes for TA to open a gentlemen's club in Norfolk, Virginia.

- On or about July 20, 2010, Anthony Burfoot voted to approve an ordinance authorizing certain signage for a restaurant by the name of Bootleggers located on Granby Street in Norfolk.

- On or about February 15, 2011, Anthony Burfoot voted to approve an ordinance authorizing the City of Norfolk to execute a second amendment to the MidTown LDDC. Specifically, this ordinance authorized the City to guarantee a portion of the STOP Organization's lease.

- On or about June 26, 2012, Anthony Burfoot voted to approve an ordinance authorizing RB to encroach into the right-of-way of Atlans Street in Norfolk.

- Between in or about January 2013 and May 2013, Anthony Burfoot promised RB that he would waive penalties and interest on RB's property taxes, and that he would give RB advance notice of properties that would be subject to City of Norfolk tax sales.

        Respectfully submitted,

        Dana J. Boente
        United States Attorney

By:    /s/
        Katherine Lee Martin
        Melissa E. O'Boyle
        Uzo E. Asonye
        Assistant United States Attorneys
        United States Attorney's Office
        919 E. Main Street, Suite 1900
        Richmond, Virginia 23219
        Phone: (804) 819-5400
        Fax: (804) 819-7417
        katherine.martin@usdoj.gov

**CERTIFICATE OF SERVICE**

   I hereby certify that on the 21st day of October 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Andrew Michael Sacks
Sacks & Sacks
150 Boush St
Suite 501
Norfolk, VA 23510-3874
(757) 623-2753
Email: andrewsacks@lawfirmofsacksandsacks.com

            Dana J. Boente
            United States Attorney

By:   /s/
            Katherine Lee Martin
            Assistant United States Attorney
            United States Attorney's Office
            919 E. Main Street, Suite 1900
            Richmond, Virginia 23219
            Phone:  (804) 819-5400
            Fax:  (804) 819-7417
            katherine.martin@usdoj.gov