**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

UNITED STATES of AMERICA,

v.                                                                    **Criminal No. 2:16cr6**

ANTHONY L. BURFOOT,

                **Defendant.**

## OPINION & ORDER

This matter is before the Court on Defendant Anthony Burfoot's ("Defendant's") eight (8) post-trial motions: (1) Rule 33 Motion for a New Trial on All Counts of Conviction for the Jury's Failure to Deliberate Fully and to Follow the Jury Instructions regarding Deliberations ("Rule 33 Motion for Jury's Failure to Deliberate"), Doc. 159; (2) Rule 33 Motion for a New Trial on All Counts of Conviction, and Renewal of Motion for Mistrial, for Inadmissible Opinion and Hearsay Testimony regarding Government Witness Ronald Boone, Sr.'s Perceived Influence with the City of Norfolk ("Rule 33 Motion for Inadmissible Testimony"), Doc. 161; (3) Rule 33 Motion for a New Trial on Count Four, or, in the Alternative, Rule 29 Motion for a Judgment of Acquittal on Count Four, Based on a Constructive Amendment of the Indictment on Count Four ("Rule 33 or 29 Motion on Count Four for Constructive Amendment"), Doc. 163; (4) Rule 29 Motion for a Judgment of Acquittal as to Count One for Insufficiency of the Evidence That There Was a Conspiracy to Commit Wire Fraud ("Rule 29 Motion on Count One for Insufficiency of Evidence"), Doc. 165; (5) Rule 29 Motion for a Judgment of Acquittal as to Count Two for Insufficiency of the Evidence to Establish That the Defendant Transmitted or

Caused to Be Transmitted a Wire Communication ("Rule 29 Motion on Count Two for Insufficiency of Evidence"), Doc. 167; (6) Rule 29 Motion for a Judgment of Acquittal as to Counts One and Two on the Grounds That the Evidence, at Best, Established That Defendant Engaged in a Conflict of Interest, as Opposed to a Bribery Scheme, Involving His Alleged Former Role with Tivest ("Rule 29 Motion on Counts One and Two"), Doc. 169; (7) Post-Verdict Renewal of Certain Previously Filed and Made Motions ("Renewal of Certain Previous Motions"), Doc. 171; and (8) Supplemental Rule 29 Motion for a Judgment of Acquittal as to Counts One and Two on the Grounds That the Evidence, at Best, Established That Defendant Engaged in a Conflict of Interest, as Opposed to a Bribery Scheme, Involving His Alleged Former Role with Tivest ("Supplemental Rule 29 Motion"), Doc. 175 (together, the "Motions"). The Government opposes the Motions. Doc. 177. On April 12, 2017, the Court convened a hearing, heard evidence and argument on the Motions, and ruled from the bench. The Court **DENIED** Defendant's Motions and now issues this Opinion and Order setting forth the reasons for its ruling in further detail.

## I. BACKGROUND

On January 7, 2016, a federal grand jury returned an eight-count Indictment charging Defendant with (1) Conspiracy to Commit Honest Services Wire Fraud, in violation of 18 U.S.C. § 1349; (2) Honest Services Wire Fraud, in violation of 18 U.S.C. § 1343; (3) Conspiracy to Obtain Property Under Color of Official Right, in violation of 18 U.S.C. § 1951; (4) Obtaining Property Under Color of Official Right, in violation of 18 U.S.C. § 1951; and (5)–(8) Perjury, in violation of 18 U.S.C. § 1623. Doc. 3. The Indictment also includes a provision for criminal forfeiture in accordance with 18 U.S.C. § 981(a)(1)(C). Id.

A five-week jury trial in the instant matter commenced on November 7, 2016. On

2

December 9, 2016, at the conclusion of the jury trial, the jury rendered a verdict finding Defendant Guilty on Counts 1, 2, 3, 4, 7, and 8 and Not Guilty on Counts 5, and 6. Doc. 144. On January 11, 2017, the Defendant filed seven (7) post-trial motions. Docs 159, 161, 163, 165, 167, 169, 171. On February 15, 2017, the Defendant filed a supplement to one of his post-trial motions. Doc. 175. On February 24, 2017, the Government responded in opposition to the Motions. Doc. 177. Sentencing of the Defendant is set for April 17, 2017 at 11:00 AM.

## II.    LEGAL STANDARDS

### A.    Motion for Judgment of Acquittal

Federal Rule of Criminal Procedure 29 governs motions for judgment of acquittal. In reviewing a motion for judgment of acquittal, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). The court allows "the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982). "The jury, not the reviewing court, weighs the credibility of the evidence and resolves any conflicts in the evidence presented." United States v. Murphy, 35 F.3d 143, 148 (4th Cir. 1994). In weighing inconsistencies, "[w]e also assume that the jury resolved all contradictions in the testimony in favor of the government." United States v. Moye, 454 F.3d 390, 394 (4th Cir. 2006) (citing United States v. Sun, 278 F.3d 302, 313) (4th Cir. 2002)).

### B.    Motion for a New Trial

Federal Rule of Criminal Procedure 33(a) provides that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Whether to grant or deny a

3

motion for a new trial is within the broad discretion of the district court, which should be disturbed only in very limited circumstances. See United States v. Smith, 451 F.3d 209, 216–17 (4th Cir. 2006); United States v. Perry, 335 F.3d 316, 320 (4th Cir. 2003). When ruling on a Rule 33 motion, a court "is not constrained by the requirement that it view the evidence in the light most favorable to the government" and "may evaluate the credibility of the witnesses" if necessary. United States v. Arrington, 757 F.2d 1484, 1485 (4th Cir. 1985). A court "should exercise its discretion to grant a new trial sparingly, and it should do so only when the evidence weighs heavily against the verdict." United States v. Chong Lam, 677 F.3d 190, 203 (4th Cir. 2012) (internal quotations and citations omitted).

## III. ANALYSIS

### A. Defendant's Motions for Judgments of Acquittal Fail

Defendant filed four (4) post-trial motions that seek relief in the form of a judgment of acquittal based on Federal Rule of Criminal Procedure 29: (1) Rule 29 Motion on Count One for Insufficiency of Evidence, Doc. 165; (2) Rule 29 Motion on Count Two for Insufficiency of Evidence, Doc. 167; (3) Rule 29 Motion on Counts One and Two, Doc. 169; and (4) Supplemental Rule 29 Motion, Doc. 175 (together the "Motions for Judgments of Acquittal").

#### i. *Rule 29 Motion on Count One for Insufficiency of Evidence*

In Defendant's Rule 29 Motion on Count One for Insufficiency of Evidence, Doc. 165, Defendant argues that "the trial evidence was insufficient to establish any of the three elements for honest-services wire fraud conspiracy." Doc. 166 at 2.

Count One charged the Defendant with Conspiracy to Commit Honest Services Wire Fraud. Doc. 3. Jury Instruction No. 18 listed three elements for the offense of Conspiracy to Commit Honest Services Wire Fraud as charged in Count One:

4

First: That the conspiracy, agreement, or understanding to commit honest-services wire fraud through bribery, as charged in the indictment, was formed, reached, or entered into by two or more persons; and

Second: That at some time during the existence or life of the conspiracy, agreement, or understanding, the defendant knew the purpose of the agreement, which was that the defendant would solicit, accept or agree to accept a thing of value in return for his performance or promise to perform an official act; and one or more of the co-conspirators agreed to use a wire in interstate commerce to further the purpose of the conspiracy; and

Third: That with knowledge of the purpose of the conspiracy, agreement, or understanding, the defendant then deliberately joined the conspiracy, agreement, or understanding.

J.I. #18.

Defendant argues that the "only evidence of any wire communication during the life of the alleged conspiracy was Dwight Etheridge's sister's use of a credit card to partially satisfy a Tivest tax delinquency on February 14, 2011 at the Norfolk City Treasurer's Office." Doc. 166 at 2. Defendant claims

there is no evidence that two or more people agreed to use interstate wire communications to commit honest-services fraud. . . . [T]here is, again, no evidence, that the defendant 'knew the purpose of the agreement' included that 'one or more of the c[o]-conspirators agreed to use a wire in interstate commerce to further the purpose of the conspiracy.' . . . [And], the defendant lacked 'knowledge of the purpose of the purpose of the conspiracy, agreement, or understanding.'

Id. at 2–3. Relying on Par v. United States, 363 U.S. 370 (1960), the Defendant also argues that "even if, arguendo, there were evidence of a conspiracy between Mr. Etheridge and the defendant to use an interstate wire communication, such wire as established on February 11, 2011, as a matter of law, cannot qualify." Id. at 3.

The Government argues this "motion is entirely without merit as a rational trier of fact had substantial evidence to support guilt on Count One." Doc. 177 at 7. The Government claims it "overwhelmingly satisfied each element of this charge." Id. at 8. As evidence to support Defendant's conviction on Count One, the Government points to the testimony of Dwight

Etheridge, Curtis Etheridge, and Recardo Lewis, and to "over 200 exhibits including, but not limited to, highly incriminating bank statements, phone records, home improvement invoices, and evidence of three interstate wire transfers supporting this scheme to defraud the citizens of Norfolk." Id.

The Government further notes that Dwight Etheridge provided detailed testimony about using his sister's credit card to pay delinquent real estate taxes "to ensure passage of a crucial and controversial ordinance regarding the MidTown Office Tower project. The use of the credit card caused an interstate wire that ultimately furthered the scheme, and there was substantial evidence that [Defendant] could reasonable foresee the use of such a wire." Id. at 9–10. Additionally, "Mr. Etheridge testified that, in connection with the Broad Creek Villas project, he received an interstate wire of approximately $4 million from Paramount Community Development Fund, LLC to use to build the Broad Creek Villas Project. Mr. Etheridge used a portion of these funds to bribe [Defendant.]" Id. at 9.

The Court believes that the elements of Count One were fully satisfied at trial through the introduction of substantial evidence. The testimony from Dwight Etheridge, Curtis Etheridge, Ricardo Lewis, and Gary Ellick, in addition to numerous government exhibits served as evidence that the Government established all three (3) elements of Count One. While Defendant denied much of the assertions in the aforementioned testimony, the jury did not find Defendant's explanations credible and convicted Defendant on Count One. Further, the Court heard evidence at trial regarding the Norfolk City Treasurer's office's established policies for handling the payment of taxes via credit card. Such evidence demonstrated that it was certainly foreseeable that Mr. Etheridge's tax payments would be made via credit card. Additionally, the receipts of Mr. Etheridge's payments, which were made available to Defendant prior to next scheduled City

6

Council meeting, indicate that Mr. Etheridge made such payments by credit card. The Court also noted that Defendant's instructions to Wendy Petchel, a Norfolk City Treasurer's office employee, to prepare Tivest's taxes and to accept Mr. Etheridge's credit card payments made Ms. Petchel an unindicted co-conspirator. As such, it was certainly foreseeable that a wire would be used in the payment of the taxes. Finally, the $4 million interstate wire intended for the Broad Creek Villas project further supports the jury's guilty verdict on this Count. As such, because a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Jackson, 443 U.S. at 319 (1979), and because the Court rejects that the wire communication was a legally compelled act pursuant to Par, 363 U.S. at 370, the Court **DENIED** Defendant's Rule 29 Motion on Count One for Insufficiency of Evidence. Doc. 165.

### ii.    *Rule 29 Motion on Count Two for Insufficiency of Evidence*

In Defendant's Rule 29 Motion on Count Two for Insufficiency of Evidence, Doc. 167, the Defendant argues that "the trial evidence was insufficient to establish that the defendant 'transmitted or caused to be transmitted' Dwight Etheridge's sister's credit card payment as alleged in Instruction No. 22." Doc. 168 at 2. Count Two charged the Defendant of Honest Services Wire Fraud. Doc. 3. Jury Instruction No. 22 lists four (4) elements for the offense of Honest Services Wire Fraud as charged in Count Two:

(1) That the defendant knowingly devised or participated in a scheme to defraud, through bribery, the public of its right to the honest services of a public office, as charged in Count Two;
(2) That the defendant did so knowingly and with an intent to defraud;
(3) That the scheme or artifice to defraud involved a material misrepresentation, false statement, false pretense, or concealment of material fact; and
(4) That in advancing, or furthering, or carrying out the scheme to defraud, the defendant transmitted, or caused to be transmitted, the writing, sign, signal, picture, or sound alleged by means of a wire communication in interstate commerce, as charged in Count Two.

J.I. #22. Further, Jury Instruction No. 35 states the "phrase 'transmits or causes to be transmitted

by means of wire communication in interstate commerce' means to send or cause to be sent from one state to another by means of telephone or telegraph lines." J.I. #35. Jury Instruction No. 35 also states

> Evidence that the defendant agreed to cause a communication by others is sufficient. This does not mean that the defendant must specifically have authorized others to do the communication. When one does an act with knowledge that the use of a wire communication will follow in the ordinary course of business or where such use of a communication can reasonably be foreseen even though not actually intended, then one causes an interstate wire communication to be used.

Id.

The Defendant argues that "the trial evidence was insufficient to establish that the defendant 'transmitted and caused to be transmitted' Dwight Etheridge's sister's credit card payment as alleged in Instruction No. 22." Doc. 168 at 2. Defendant claims he did not engage in a discussion with Dwight Etheridge "about the means of payment, the use of a credit card, or any other aspect of the utilization of wires." Id. at 2. Defendant also claims "there is no evidence that the defendant urged Mr. Etheridge to pay the delinquency 'with knowledge that the use of a wire communication will follow in the ordinary course of business,' as set forth in Instruction No. 35." Id. Defendant contends that he did not reasonably foresee the use of a communication by Mr. Etheridge as "it was never discussed, the defendant had no personal knowledge of how the debt was to be paid, and nothing beyond speculation of guesswork exists as to any foreseeability by the defendant of the use of a credit card." Id. Finally, Defendant reasserts that the wire communication was part of a "legally compelled act" which cannot qualify under Parr. Id. (citing 363 U.S. at 370).

The Government alleges it "presented overwhelming evidence to satisfy each element of this charge." Doc. 177 at 15. The Government argues "[a]ll of the evidence . . . that supported

the conspiracy to commit honest services wire fraud charge also is sufficient to sustain the substantive honest services wire fraud charge." Id. Also, the Government claims it "presented evidence of other quid pro quo relationships that Burfoot engaged in with other developers," including Thomas E. Arney and Ronald W. Boone. Id. Additionally, the Government "presented substantial evidence that Dwight Etheridge's use of his sister's credit card to pay his delinquent taxes was indeed a 'step in the plot' of Burfoot's bribery scheme." Id. at 17. The Government alleges that the "evidence demonstrated that the wire was pivotal to the success of the scheme." Id. This evidence "clearly established that but for this interstate wire transfer paying delinquent taxes, Barclay Winn would not have voted in favor of the MidTown Office Tower project, and the ordinance would not have passed." Id. (emphasis in original). Finally, "the evidence demonstrated that Burfoot was well aware that Tivest's delinquent taxes directly threatened the outcome of the vote, and could reasonably foresee the use of the wire in this case." Id.

Defendant's conviction on Count Two was fully supported by considerable evidence. The Government's evidence, including the evidence mentioned above, supra Part III.A.i, to support conviction on Count One and the testimony from Mr. Arney and Mr. Boone, establishes that the Defendant used a mailing or interstate wire as "part of the execution of the fraud." Schmuck v. United States, 489 U.S. 705, 710 (1989). As such, because the jury heard this evidence and convicted Defendant on Count Two and because the Court rejects that the wire communication was not a legally compelled act, the Court **DENIED** Defendant's Rule 29 Motion on Count Two for Insufficiency of Evidence. Doc. 167.

    *iii.*    *Rule 29 Motion on Counts One and Two and Supplemental Rule 29 Motion*

In Defendant's Rule 29 Motion on Counts One and Two, Doc. 169, and Supplemental

Rule 29 Motion, Doc. 175, Defendant moves for judgments of acquittal on Counts One through Four and argues that "the evidence, at best, established that the defendant engaged in a conflict of interest, as opposed to a bribery scheme, involving his alleged former role with Tivest." Doc. 169 at 1; Doc. 175 at 1. As noted above, Counts One through Four charged the Defendant with: (1) Conspiracy to Commit Honest Services Wire Fraud; (2) Honest Services Wire Fraud; (3) Conspiracy to Obtain Property Under Color of Official Right; and (4) Obtaining Property Under Color of Official Right. Doc. 3.

Defendant moves for judgments of acquittal on Counts One through Four as Defendant claims the evidence only established that he engaged in a conflict of interest with Tivest and such evidence "was not violative of the honest-services fraud statute" or the Hobbs Act. Doc. 170 at 3. Defendant relies on <u>Skilling v. United States</u>, 561 U.S. 358 (2010), for support. <u>Id.</u> at 2; Doc. 176 at 1.

In <u>Skilling</u>, the Supreme Court limited the federal honest services wire fraud statute to include only schemes involving bribes and kickbacks. 561 U.S. at 412. In that case, "[t]he Government did not, at any time, allege that Skilling solicited or accepted side payments from a third party in exchange for making . . . misrepresentations" about the company's financial health. <u>Id.</u> at 413.

Defendant argues that he did not commit "the acts assigned to him by the Government's evidence," but, even if he did, such evidence only amounts to a conflict of interest and not a bribery scheme. Doc. 170 at 2. Based on the Government's evidence, Defendant claims he "was not acting on bribes, but was voting on projects in which he had an undisclosed financial interest, since it was from those projects that Tivest intended to pay his 'cash out' debt owed by Tivest." <u>Id.</u> at 2–3. Accordingly, the Government's evidence supporting Counts One through Four was

outside the scope of the federal honest-services fraud statute and Hobbs Act as defined by Skilling. Id. at 3.

The Government opposes Defendant's Rule 29 Motion on Counts One and Two, Doc. 169, and Supplemental Rule 29 Motion, Doc. 175, and further argues it proved "the defendant engaged in a bribery or kickback scheme." Doc. 177 at 19. The Government notes that "the court made it crystal clear to the jury that a quid pro quo bribery relationship was required to sustain guilty verdicts on Counts One through Four." Id. Specifically, jury instructions for Count One included as an element an "agreement or undertaking to commit honest-services wire fraud through bribery." Id. at 19–20 (quoting J.I. No. 18). The jury instructions for Count Two included as an element that "the defendant knowingly devised or participated in a scheme to defraud, through bribery, the public of its right to the honest services of a public official." Id. at 20 (quoting J.I. No. 24). The jury instructions for Count Three included as an element that "the defendant knew the purpose of the agreement which was that he would obtain a thing of value in return for his performance or promise to perform an official act." Id. (quoting J.I. No. 38). Finally, the jury for Count Four included as an element that the "defendant obtained a thing of value not due him or his office" and did so "knowing that the thing of value was given in return for official action." Id. (quoting J.I. No. 42).

The Government also notes that "the record is replete with examples of bribes and kickbacks. The record disclosed evidence that defendant maintained at least three separate bribery relationships with Tivest, Ronald Boone, and Thomas Arney." Id. Additionally, "testimony concerning each bribery relationship . . . was corroborated by dozens of documents and at least one other witness." Id. at 21.

Despite Defendant's reliance on Skilling, the Rule 29 Motion on Counts One and Two,

Doc. 169, and Supplemental Rule 29 Motion, Doc. 175, both fail. As noted by the Government, the jury instructions for each of Counts One through Four required the jury to find that Defendant engaged in bribery. Doc. 177 at 19–20. Additionally, the Government introduced considerable testimonial and documentary evidence to support the bribery relationships underlying Counts One through Four. This case is not limited by Skilling. Defendant did not merely fail to reveal that he was previously an owner in Tivest and suffer from a conflict of interest. Rather, the jury concluded that the evidence presented was sufficient to support the disputed bribery relationships. Thus, the Court **DENIED** Defendant's Rule 29 Motion on Counts One and Two, Doc. 169, and Supplemental Rule 29 Motion, Doc. 175.

**B.** **Rule 33 or 29 Motion on Count Four for Constructive Amendment is Insufficient**

In Defendant's Rule 33 or 29 Motion on Count Four for Constructive Amendment, Doc. 163, Defendant moves for a new trial on Count Four, or, in the alternative, for a judgment of acquittal on Count Four because "the Court constructively amended Count Four through its instructions in response to a jury question regarding Count Four." Id. at 1.

A constructive amendment occurs when the government or the court broadens the possible bases for conviction beyond those presented to the grand jury. United States v. Sampson, 140 F.3d 585, 589 (4th Cir. 1998); United States v. Floresca, 38 F.3d 706, 710 (4th Cir. 1994). A constructive amendment can occur when the evidence at trial changes or alters the essential elements of the crime charged in the indictment. United States v. Randall, 171 F.3d 195, 209 (4th Cir. 1999). If an indictment charges an offense in the conjunctive and either of multiple prongs is a sufficient basis for conviction, instructing the jury in the disjunctive does not constitute constructive amendment of the indictment. United States v. Robinson, 627 F.3d 941, 958 (4th Cir. 2010); United States v. Perry, 560 F.3d 246, 255–56 (4th Cir. 2009) cert denied,

558 U.S. 886 (2009). Further, a court's issuance of supplemental jury instructions is entitled to a high degree of deference. United States v. United Medical & Surgical Supply Corp., 989 F.2d 1390, 1407 (4th Cir. 1993).

Count Four charged the Defendant with Obtaining Property Under Color of Official Right, in violation of 18 U.S.C. § 1951. Doc. 3. Jury Instruction No. 40 states:

> Count Four of the indictment charges that from in or about October 2008 through in or about February 2011, in the Eastern District of Virginia and elsewhere, defendant Anthony L. Burfoot, and other persons known and unknown to the grand jury, knowingly and intentionally attempted to, did and caused each other and others to obstruct, delay and affect in any way and degree commerce, and the movement of articles and commodities in commerce, by extortion, as those terms are defined in Title 18, United States Code, Section 1951, that is: Anthony L. Burfoot obtained approximately $50,000 and other things of value not due Anthony L. Burfoot or his office and to which Anthony L. Burfoot was not entitled, from Curtis Etheridge, Dwight Etheridge, Recardo Lewis, and Tivest, with their consent, under color of official right, in violation of Title 18, United States Code, Sections 1951 and 2.

J.I. #40. The jury questioned whether the Government was required to prove the Defendant received a particular amount of money: "For Count 4, do we need to prove Anthony Burfoot obtained $50,000 cash and something of value? [O]r something of value and cash equating to $50,000?" Doc. 164 at 1. The Court directed the jury to review Jury Instructions Nos. 42 and 43, which list the elements of Count Four. Doc. 177 at 22. The jury then requested additional guidance. Id. The Court gave the jury the following additional instruction: "Ladies and gentlemen, in further response to your question, the Government must prove that the defendant received something of value. The Government does not have to prove what that amount of value was or doesn't have to quantify it. They have to prove that he received something of value." Doc. 164 at 1–2 (quoting Doc. 163, Ex. 1 at 15). The Defendant objected to this additional instruction on the grounds that "the instruction constituted a constructive amendment of the Indictment." Id. at 2. In Defendant's Rule 33 or 29 Motion on Count Four for Constructive

13

Amendment, Doc. 163, Defendant renews his previous objection.

Because Jury Instruction No. 40 states that the defendant "obtained approximately $50,000 and other things of value," Defendant argues that "the Government was required to prove beyond a reasonable doubt that the defendant obtained that specific amount of money and other things of value." Doc. 164 at 2 (emphasis in original). The Court's instruction, however, "allowed the jury to find the defendant guilty so long as he received anything of value, regardless of whether he received $50,000 or not, in contravention of the specific allegation in the Indictment." Id. (emphasis in original). Accordingly, "by instructing the jury in the manner that it did, the Court unintentionally changed what was charged in Count Four, thereby broadening 'the possible bases for conviction beyond those presented by the grand jury.'" Id. at 2–3.

The Government asserts "the Court did not constructively amend Count Four of the indictment." Doc. 177 at 24. Notably, the Defendant did not object to the Court's jury instructions that detailed the elements of Count Four. Id. The elements of Court Four "do not require the government to prove that the defendant obtained any particular sum of money or thing of value." Id. The Government argues that the $50,000 "was not an essential element of the offense charged," rather that the Defendant "obtained a thing of value not due him." Id. at 24–25. As such, "the Court did not amend the indictment by instructing the jury that all the government had to prove was that the defendant received something of value." Id. at 25. Also, the indictment charged the Defendant of Count Four in the conjunctive: that the Defendant "obtained approximately $50,000 and other things of value not due him." Id. Thus, the "Court did not amend the indictment by instructing the jury in the disjunctive—that the government simply had to prove the defendant received a thing of value not due him." Id.

The Court did not constructively amend Count Four by providing the jury with Jury

Instruction No. 40 and an additional instruction regarding what the Government had to prove for the Defendant to be found guilty of Count Four. The Court did not constructively amend Count Four as the Government may charge in the conjunctive and prove such a charge in the disjunctive, which is exactly what happened in this instance. Robinson, 627 F.3d at 958; Perry, 560 F.3d at 255–56. As the Government notes, the Defendant did not object to Jury Instruction No. 40. Defendant objected to the Court's additional instruction regarding Count Four, Doc. 163, Ex. 1 at 13–14, and Defendant renews that objection in the Rule 33 or 29 Motion on Count Four for Constructive Amendment, Doc. 163. Notably, the Court responded to Defendant's objection by stating that "the use of the words 'and' and 'or,' conjunctive or disjunctive, may be read either way in an indictment." Doc. 163, Ex. 1 at 14. Because the Court's additional instruction did not "broaden[ ] the possible bases for conviction beyond those presented to the grand jury," Floresca, 38 F.3d at 710, and because the Court's instruction to the jury in the disjunctive "does not constitute constructive amendment of the indictment," Robinson, 627 F.3d at 958, Defendant's Rule 33 or 29 Motion on Count Four for Constructive Amendment, Doc. 163, fails. As such, the Court **DENIED** Defendant's Rule 33 or 29 Motion on Count Four for Constructive Amendment. Doc. 163.

## C.     Defendant's Remaining Rule 33 Motions Fail

Defendant filed two (2) post-trial motions that seek relief in the form of a new trial based on Federal Rule of Criminal Procedure 33: (1) Rule 33 Motion for Jury's Failure to Deliberate, Doc. 159; and (2) Rule 33 Motion for Inadmissible Testimony, Doc. 161.

### i.     Rule 33 Motion for Jury's Failure to Deliberate

In Defendant's Rule 33 Motion for Jury's Failure to Deliberate, Doc. 159, the Defendant moves the Court "for the entry of an Order vacating the jury verdicts of guilty and granting the

defendant a new trial on the grounds that the jury failed to deliberate fully and to follow the jury instructions regarding deliberations." Id. at 1.

The Court "cannot hold an hour-glass over a jury." Marx v. Hartford Acc. & Indem. Co., 321 F.2d 70, 71 (5th Cir. 1963). "Juries are presumed to follow instructions." Chong Lam, 677 F.3d at 204 (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)). A "brief deliberation cannot, alone, be a basis for acquittal." United States v. Cunningham, 108 F.3d 120, 124 (7th Cir. 1997) ("But the time it takes the jury to decide is not the relevant factor. The weight of the evidence is."); see Wilburn v. Eastman Kodak Co., 180 F.3d 475, 476 (2d Cir. 1999) ("A jury is not required to deliberate for any set length of time. Brief deliberation, by itself, does not show that the jury failed to give full, conscientious or impartial consideration to the evidence"); Guaranty Service Corp. v. American Employers' Insurance Co., 893 F.2d 725, 729 (5th Cir. 1990) ("If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial.") (internal citation omitted). Federal courts routinely uphold verdicts with brief jury deliberations. See, e.g., United States v. Saoud, 595 F. Appx 182, 192 (4th Cir. 2014) (deliberating "over thirty-two counts in just over two hours") (unpublished); United States v. Cunningham, 108 F.3d 120, 124 (7th Cir. 1997) (10 minutes of deliberation).

Due to an allegedly brief jury deliberation, Defendant claims that "the verdicts of guilty are the result of a defective deliberation process, thereby requiring the Court to vacate the verdicts of guilty and grant the defendant a new trial thereon." Doc. 160 at 2. Defendant notes that the "trial of this matter required five weeks, comprised 91 witnesses (including 87 different individuals and 4 individuals who were called twice), over 270 exhibits (comprising approximately several thousand individual pages), one hour and 44 minutes of jury instructions, five hours of closing arguments, and 56 separate written jury instructions." Id. at 1. Defendant

alleges that, after "receiving the instructions, exhibits, and verdict form, the jury deliberated for approximately four hours and 50 minutes before reaching verdicts of guilty on six of eight counts." Id. The Court instructed the jury to "consider all of the evidence in the case," J.I. #2, to "carefully scrutinize all the testimony given," J.I. #6, and to "decide the case for yourself, but only after an impartial consideration of all the evidence in the case with your fellow jurors" J.I. #56. Because of the

> quantity of evidence alone, the length of time required to read the jury instructions once, and the length of time that it required the parties merely to summarize key points of the evidence along (cumulatively over 6 hours and 40 minutes), the defendant respectfully submits that it is clear that a jury simply could not fully deliberate in the fashion it was instructed in 4 hours and 50 minutes.

Doc. 160 at 5.

The Government opposes Defendant's Rule 33 Motion for Jury's Failure to Deliberate, Doc. 159, "because there is no minimum time a jury must deliberate, and the jury in this case deliberated appropriately." Doc. 177 at 25. "Before a district court attaches any significance to the amount of time the jury took for deliberations, there must be a reason to suspect that the jury in some way disregarded its instructions or otherwise failed in its duty. In this case, there is none." Id. at 28. The Government argues that "Defendant cannot assert any defect in the jury's deliberation other than the length of the deliberation itself, which alone, is irrelevant. There is no evidence in the record that the jury was in attentive, confused, or did not understand the court's instructions." Id. Further, the Government claims that the "jury was not obligated to re-review every document one by one," but only to find the facts essential to a criminal conviction. Id. at 28–29 (citing United States v. Martin Linen Supply Co., 430 U.S. 564, 572–73 (1977)). Because "the evidence presented against the defendant was overwhelming and sufficient to support each guilty verdict" and "the jury had an opportunity to evaluate the defendant's credibility, his core

17

arguments, and resolve any factual disputes," the Government argues the "weight of the evidence against the defendant is yet another reason that the duration of deliberations is irrelevant." Id. at 29. Additionally, the "split verdict suggests that the jury carefully considered the evidence and applied it to each charge independently." Id. (citing United States v. Walker, 720 F.2d 1527, 1534 (11th Cir. 1983)).

That jury deliberations in this matter lasted approximately five (5) hours[1] is not evidence that the jury in some way disregarded the Court's instructions or otherwise failed to properly deliberate. The Court noted that the weight of the evidence in this case was overwhelming and that this case was not complex. Additionally, no evidence suggests that the jury was inattentive, confused, or disregarded the Court in any way. As noted above, there is no minimum or required period of jury deliberation. Also, there has been no indication that the jury deliberated in an inappropriate fashion. Rather, the substantial weight of evidence against the defendant and the jury's split verdict indicate that the jury upheld its duty to "find the facts essential to a criminal conviction." Martin Linen Supply Co., 430 U.S. at 572–73; Walker, 720 F.2d at 1534. As such, the Court **DENIED** Defendant's Rule 33 Motion for Jury's Failure to Deliberate. Doc. 159. Further, the jury's detailed requests for clarifying instructions from the Court as to Count Four evidences the jury's careful consideration of the instructions.

### ii. Rule 33 Motion for Inadmissible Testimony

In Defendant's Rule 33 Motion for Inadmissible Testimony, Doc. 161, the Defendant argues that the testimony from prosecution witness Tommy Smigiel regarding prosecution witness Ronald Boone, Sr. was inadmissible testimony that cannot be cured notwithstanding the District Court's instructions to the jury to disregard witness Smigiel's testimony. Id. at 1.

---

[1] The jury was actually deliberating for five (5) hours and twenty (20) minutes, but Defendant has subtracted thirty (30) minutes for the time counsel and the Court reviewed the exhibits and jury instructions before they were physically delivered to the jury room.

Specifically, Mr. Smigiel testified on direct examination that "there has always been a perception, since I have been on council, that Ronnie Boone and the Boone family have been able to get whatever they want, and it doesn't matter that they aren't following the same rules as everybody else." Id., Ex. 1 at 1.

Whether to grant a motion for a mistrial is left to the broad discretion of the trial court. See e.g., United States v. Johnson, 587 F.3d 625, 631 (4th Cir. 2009) cert denied, 559 U.S. 1082 (2010). To determine the extent of prejudice from any alleged error, the court must consider "the closeness of the case, the centrality of the issue affected by the error, and the steps taken to mitigate the effects of the error." United States v. Nyman, 649 F.2d 208, 213 (4th Cir. 1980) (quoting Gaither v. United States, 413 F.2d 1061, 1079 (D.C. Cir. 1969)). Reversal is required only if there is a "reasonable possibility that the jury's verdict was influenced by the improper material." United States v. Seeright, 978 F.2d 842, 849 (4th Cir. 1992).

Defendant objected to Mr. Smigiel's testimony and, during a sidebar conference, argued that it was inadmissible hearsay and opinion testimony. Id., Ex. 1 at 2. The Defendant "requested a mistrial and, while the Court denied the motion for a mistrial, the Court sustained the defendant's objection and, at the defendant's request, delivered a cautionary instruction to the jury to disregard the testimony." Id., Ex. 1 at 1–2. Specifically, the Court stated the following to the jury:

> Ladies and gentlemen, a witness who does not qualify as an expert witness is not generally allowed to give opinions, and for somebody to say that his perception is that in this case that Ronnie Boone got special treatment, is not proper testimony because that's an opinion. So perception cannot be the basis for evidence that Boone got special treatment. That's just not competent evidence, and you should disregard it.

Id., Ex. 1 at 2.

Defendant argues that "a mistrial should have been granted based on this highly

prejudicial inadmissible evidence and that the defendant is entitled to a new trial as a result thereof." Doc. 161 at 3. Defendant argues that "the remedial steps taken by the Court to cure this erroneous evidence is only one factor to be considered." While the Court "did all it could to 'mitigate' the prejudice of the inadmissible testimony, the defendant respectfully submits that 'the closeness of the case' and 'the centrality of the issue affected by the error' outweigh the curative instruction's intended effect." Id.

The Government argues that the "Court did not abuse its discretion in denying the defendant's motion for a mistrial, and the defendant was not unfairly prejudiced by this stricken testimony." Doc. 177 at 30. The Government claims "the evidence against the defendant was strong" and "Councilman Smigiel's statement was a brief, isolated comment made in the course of a five-week trial replete with evidence establishing the defendant's guilt." Id. at 31. The Government notes that the "Court quickly cured any harm that may have resulted by instructing the jury that the witness had offered an improper opinion, and the testimony should be disregarded." Id. at 32. The Court further reminded the jury in Jury Instruction No. 2 that "[a]ny evidence as to which an objection was sustained by the judge, and any evidence ordered stricken by the judge, must be entirely disregarded." J.I. #2; id. "Accordingly, the defendant has not shown that there was a reasonable possibility that the jury's verdict was impacted, and his motion for a new trial should be denied." Id.

Defendant's Rule 33 Motion for Inadmissible Testimony, Doc. 161, fails. While Mr. Smigiel's contested testimony was inadmissible, it was not notably prejudicial. Specifically, and considering the Nyman factors, 649 F.2d at 213, a mistrial is not warranted as the comments were limited in nature and met with the Court's instructions to the jury to disregard the testimony. The Court acknowledged that the comment was inadmissible and, as such, instructed

20

the jury to disregard it. The Court **FOUND** that the comment did not impact any of the elements of the offenses of which Defendant was convicted and that the comment was not unduly prejudicial as it was simply an overall opinion which the Court instructed the jury to disregard. As such, the Court **DENIED** Defendant's Rule 33 Motion for Inadmissible Testimony. Doc. 161.

**D.      Defendant's Renewal of Certain Previous Motions is Ineffectual**

In Defendant's Renewal of Certain Motions, Doc. 171, the Defendant renews certain motions "previously filed pre-trial as well as orally made at the conclusion of the Government's evidence and at the conclusion of all the evidence." Id. at 1. Specifically, the Defendant renews the following motions:

1. Motion to Dismiss Count One on Statute of Limitations Grounds, Doc. 39;
2. Motion to Dismiss Count Two on the Grounds That the Wire Communication Alleged was not in Furtherance of the Scheme to Defraud, Doc. 35;
3. Motion to Dismiss Count Four on the Grounds of Duplicitous Indictment and Statute of Limitations, Doc. 37; and
4. Motion to Dismiss Perjury Counts on the Grounds of Lack of Materiality, Doc. 43.[2]

Id. The Defendant "respectfully moves for the entry of an Order under Rule 29 vacating the verdicts of guilty as to Counts One, Two, Four, Seven and Eight based on the above renewed Motions" Id. at 1. The Defendant incorporates by reference the briefs in support of these previously filed motions and Defendant's oral argument made during trial. Doc. 172 at 1.

In opposition to Defendant's Renewal of Certain Motions, Doc. 171, the Government "relies on its earlier written responses in opposition to these motions" and argues that Defendant's renewal of such motions should be denied. Doc. 177 at 32. The Court "previously denied these motions three times: (1) prior to trial; (2) at the close [of] the government's

---

[2] As Defendant was found Not Guilty as to Counts Five and Six, Defendant renews this motion only as to Counts Seven and Eight. Doc. 171 at 1.

evidence; and (3) at the close of defendant's evidence. In each instance, the Court rightly denied the motions. Defendant has not presented any new facts or any new law to compel reversal." Id.

Having reviewed the motions and arguments underlying Defendant's Renewal of Certain Motions, Doc. 171, no reasons exist to modify or overturn the Court's previous rulings. The Court previously considered each individual motion contained within the Renewal of Certain Motion and, as the Government notes, Defendant has failed to present any new facts or to alert the Court to law that would justify altering the Court's prior rulings. Thus, the Court **DENIED** Defendant's Renewal of Certain Motions. Doc. 171.

## IV.    CONCLUSION

For the reasons above, the Court **DENIED** Defendant's Rule 33 Motion for Jury's Failure to Deliberate, Doc. 159; Rule 33 Motion for Inadmissible Testimony, Doc. 161; Rule 33 or 29 Motion on Count Four for Constructive Amendment, Doc. 163; Rule 29 Motion on Count One for Insufficiency of Evidence, Doc. 165; Rule 29 Motion on Count Two for Insufficiency of Evidence, Doc. 167; Rule 29 Motion on Counts One and Two, Doc. 169; Renewal of Certain Previous Motions, Doc. 171; and Supplemental Rule 29 Motion, Doc. 175.

The Clerk is **DIRECTED** to deliver a copy of this Opinion and Order to all counsel of record.

It is so **ORDERED**.

_____/s/_____
Henry Coke Morgan, Jr.
Senior United States District Judge
_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
April _19_, 2017